IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GREGORY LEWIS DAVIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:11cv760-MEF |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This 28 U.S.C. § 2255 motion has been submitted on the pleadings, written submissions, and an evidentiary hearing.

## I.   BACKGROUND

In January 2007, a one-count indictment was returned charging petitioner Gregory Lewis Davis ("Davis") with possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Davis was initially represented by a court-appointed federal defender, Donnie W. Bethel.  While represented by Bethel, Davis entered a guilty plea, which he was later allowed to withdraw under a provision of the written plea agreement allowing him to do so if it was determined he was subject to sentencing pursuant to the Armed Career Criminal Act ("ACCA").[1]

---

[1] The ACCA imposes a mandatory minimum sentence of fifteen years (180 months) in prison if a defendant convicted under § 922(g) has "three previous convictions ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another[.]"  *See* 18 U.S.C. § 924(e)(1).

Davis then retained the services of attorney Bruce Maddox, and Bethel was allowed to withdraw from the case.  With Maddox as his counsel, Davis proceeded to trial on December 1, 2008.  However, on the first day of trial, after the Government completed its case-in-chief, Davis entered into an oral plea agreement with the Government and again pled guilty to the charge in the indictment.  In exchange for Davis's guilty plea, the Government agreed to recommend a specific sentence of 180 months.  The plea agreement provided that Davis would be allowed to withdraw his guilty plea if the district court chose not to follow the sentencing recommendation.  The plea agreement also contained a provision whereby Davis waived his right to appeal his sentence or attack his sentence in any post-conviction proceeding.

After Davis's December 2008 guilty plea but before his sentencing, federal defender John Keller entered a notice of appearance as Davis's counsel, and Maddox was permitted to withdraw.  Keller, on behalf of Davis, then filed a motion to withdraw Davis's guilty plea, arguing that Davis had not understood when pleading guilty that he was giving up his right to appeal his sentence and an adverse ruling on a pretrial suppression motion.  On May 12, 2009, following a hearing, the district court denied Davis's motion to withdraw his guilty plea.

On June 10, 2009, attorney Thomas M. Goggans entered a notice of appearance as Davis's counsel, and Keller was permitted to withdraw from further representation.  Goggans represented Davis throughout his sentencing proceedings.  The presentence investigation report ("PSI") prepared by the probation office found that Davis was subject to sentencing

2

pursuant to the ACCA because he had a total of four prior convictions for violent felonies or serious drug offenses.  At the sentencing hearing on July 22, 2009, Goggans objected to application of the ACCA, arguing that three of Davis's prior drug convictions were not temporally distinct, as required under the ACCA, and that, as a consequence, Davis did not have the requisite number of qualifying convictions to be sentenced pursuant to the ACCA. Finding that the Government had presented sufficient proof that the three drug convictions were separate and temporally distinct qualifying crimes, the district court overruled the objection.  The court then sentenced Davis pursuant to the ACCA to 180 months in prison, as provided in the plea agreement.  The court entered a judgment on July 28, 2009.

On December 14, 2009, Davis filed a *pro se* notice of appeal.  His case was docketed by the Eleventh Circuit, and that court appointed new counsel to represent him on appeal. On January 10, 2011, however, the Eleventh Circuit granted the Government's motion to dismiss Davis's appeal on the ground that his notice of appeal was untimely filed.

On September 7, 2011, Davis filed this *pro se* 28 U.S.C. § 2255 motion, in which he presents the following claims

1. His attorney at sentencing, Thomas M. Goggans, rendered ineffective of counsel by failing to file a notice of appeal after he asked Goggans to do so.

2. His original counsel, Donnie W. Bethel, coerced him into his initial guilty plea (which he later withdrew), and his subsequent counsel, Bruce Maddox, then "frightened" him into entering another guilty plea although he did not understand its terms.

3. Counsel Bruce Maddox was ineffective for forcing him to plead guilty to a charge that included enhanced sentencing under the

ACCA when he had only two prior qualifying convictions.

4.      He is actually innocent of being an armed career criminal, because he does not have the three prior convictions for violent felonies or serious drug offenses required under the ACCA.

5.      The evidence against him should have been suppressed because it was the product of an unlawful search and seizure in violation of the Fourth Amendment.

Doc. Nos. 1 and 2.[2]

After due consideration and upon review of the motion and the pleadings filed in the case, the court determined that an evidentiary hearing was required on one limited issue. On October 9, 2013, the court held a hearing on Davis's claim that Goggans rendered ineffective assistance of counsel by failing to file a notice of appeal after Davis asked him to do so. Based on the evidence presented to the court at the hearing and the court's consideration of the parties' submissions and the record before the court, the court concludes that Davis's § 2255 motion should be denied.

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the

---

[2] References to document numbers ("Doc. No.") are to those assigned by the Clerk of Court in the instant civil action or, where indicated, in Davis's underlying criminal case, Case No. 2:07cr12-MEF. Page references are to those assigned by CM/ECF. Unless otherwise noted, references to exhibits ("Ex.") are to those filed by the Government with its answer.

Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

**B.     Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable.  *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted).  Thus, "[g]iven the strong presumption in favor of competence, the

petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1.    *Counsel's Failure to File Direct Appeal*

Davis contends that Thomas M. Goggans, the attorney who represented him at sentencing, rendered ineffective assistance of counsel by failing to file a notice of appeal

after he asked Goggans to do so.  Doc. No. 1 at 4; Doc. No. 2 at 8-12.

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the United State Supreme Court held that *Strickland v. Washington*, 466 U.S. 668 (1984), applies to determine whether counsel was ineffective for failing to file a notice of appeal.  *Flores-Ortega*, 528 U.S. at 477.  With respect to the first prong of *Strickland* – whether counsel's representation fell below an objective standard of reasonableness – the Supreme Court reaffirmed that "an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se."  *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing *Flores-Ortega*, 528 U.S. at 477).  In such cases, prejudice is presumed, and the petitioner is entitled to a new appeal without any further showing.[3]  *Flores-Ortega*, 528 at 483 ("The ... denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, ... demands a presumption of prejudice.").

Even if a client has not made a specific request of his counsel to file an appeal, counsel generally has a duty to "consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant in the defendant's position would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  *Flores-Ortega*, 528 U.S. at 480; *see also, e.g., Thompson v. United States*, 504 F.3d 1203,

---

[3] The Eleventh Circuit has held that these rules apply with equal force when a defendant waives some, but not all, of his appellate rights through a plea agreement.  *See Gomez-Diaz*, 433 F.3d at 793–94 (applying *Flores–Ortega* in case of partial waiver of appeal rights).

1206 (11th Cir. 2007).

 At the October 9, 2013, evidentiary hearing, Goggans testified that he was retained by Davis to represent him at sentencing.  According to Goggans, there was never any discussion or understanding that an appeal would be pursued.  Goggans performed legal research in preparation for Davis's sentencing, discussed the presentence report with Davis, and argued objections on his behalf at the sentencing hearing.  Those objections were overruled by the district court.

Goggans testified unequivocally that Davis never instructed him to file an appeal.  He stated that if Davis had asked him to file an appeal, he would have done so – despite there being no previous understanding about pursuing an appeal.  Goggans did not recall if he talked to Davis after the sentencing hearing about the advantages and disadvantages of an appeal.

Goggans testified that, as was his usual practice, he sent a letter to Davis after the district court entered its judgment, on July 28, 2009, telling Davis that any appeal had to be filed within 10 days and that if he wanted to appeal, he should inform Goggans by August 1, 2009.  Goggans mailed the letter to Davis at the Elmore County jail.  He stated that he never received a response from Davis.

In his testimony at the evidentiary hearing, Davis stated that Thomas Azar, an attorney representing Davis in criminal proceedings in state court at the time, sent Goggans to talk to him in jail, where he was awaiting sentencing after his federal guilty plea.  According to Davis, he told Goggans at that time that he wanted to appeal because he was dissatisfied with

the performance of a prior attorney in his federal case, Bruce Maddox, who, Davis said, "froze up" on him during the trial of his case and talked him into pleading guilty. Davis maintained that he hired Goggans to get back his appeal rights, which he said he had unwittingly waived when pleading guilty.

Davis testified that Goggans agreed to handle his appeal for $5,000. He stated that he arranged to have a friend of his named LaSheba Lawson pay Goggans $2,500 of the $5,000 fee. He maintained that some time later, after the time to appeal had expired, he spoke to Goggans on the phone about arranging to pay him the remaining $2,500. Davis claimed he would have been "a fool" to hire Goggans solely for the purpose of sentencing, because the court-appointed attorney who had handled his motion to withdraw his guilty plea could have handled his sentencing at no cost to him.

Davis maintained he never received Goggans's letter advising him that if he wished to appeal, he should inform Goggans by August 1, 2009. Davis acknowledged that the district judge told him at sentencing that he had 10 days after the court entered its written judgment to file any appeal. However, he stated that he did not attempt to contact Goggans during that time because he believed Goggans was already handling his appeal.

Davis also presented testimony from Sharon Reese. Reese testified that no more than a week after Davis was sentenced, she spoke on the phone to the secretary at Goggans's law office about arranging a payment plan for the remaining $2,500 of Goggans's fee. Reese said she believed this amount – and the $2,500 LaSheba Lawson told her she had already paid to Goggans – was for Goggans to handle Davis's appeal. According to Reese, Goggans's

secretary told her that Goggans would have to be paid "up front." The court does not credit the testimony from Lawson.

Here, Davis's testimony regarding whether he instructed Goggans to file an appeal was squarely in conflict with Goggans's testimony as to this issue, requiring the court to make a credibility determination taking into account the interests of the witnesses in the outcome of the proceedings, the consistencies or inconsistencies in their testimony, and their demeanor on the stand. *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). Having carefully attended to the testimony presented at the evidentiary hearing, the witnesses' demeanor, and the record as a whole, the undersigned finds Goggans to be credible and credits his testimony that Davis never instructed him to file an appeal.[4] Conversely, the court finds Davis's testimony that he instructed Goggans to file an appeal not to be credible.[5] The court further finds disingenuous Davis's testimony that, contrary to his sworn statements during the change of plea colloquy,[6] he did not understand he was giving up his right to appeal his sentence under the waiver provision in the plea agreement. The court therefore concludes that Davis's desire to appeal is a product of hindsight and was not a sentiment Davis made known to Goggans either before or at the sentencing hearing, or

---

[4] In this regard, the court finds that Goggans had no incentive *not* to file an appeal, had he been asked to do so.

[5] In making its credibility determinations, the court recognizes that it is improper to determine credibility based on the "status" of a witness. *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). Thus, neither Davis's status as a convicted felon nor Goggans's status as a lawyer is determinative.

[6] *See* Ex. FF at 6-7 and 11

at any time thereafter during which Goggans might have filed a timely notice of appeal.

Even if – as this court has found – Davis did not instruct Goggans to file an appeal on his behalf, Goggans had a duty to consult with Davis about an appeal if Davis reasonably demonstrated an interest in appealing or if a rational defendant in Davis's position would have sought an appeal. *Flores-Ortega*, 528 U.S. at 480. Adequate consultation means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. at 478; *Thompson*, 504 F.3d at 1206. Here, Goggans did not recall talking to Davis after the sentencing hearing about the advantages and disadvantages of appealing. Davis's testimony did not indicate whether any such discussion took place. Therefore, it is necessary to determine if Davis reasonably demonstrated an interest in appealing, or if a rational defendant in Davis's position would have sought an appeal.

As noted, this court has rejected Davis's testimony that he expressly instructed Goggans to file an appeal. There is no evidence to indicate that Davis otherwise reasonably demonstrated an interest in appealing through some means less direct than an express instruction to his counsel. Thus, the court finds that Davis did not reasonably demonstrate an interest in appealing. *Flores-Ortega*, 528 U.S. at 480.

For purposes of determining whether a rational defendant would have wanted to appeal, the Supreme Court in *Flores-Ortega* stated:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea

> may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

528 U.S. at 486.

Here, Davis was convicted pursuant to a guilty plea under a plea agreement by which he expressly waived his right to appeal his sentence on any basis. Appeal waivers are valid if made knowingly and voluntarily. *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005) (internal citation omitted). The plain language of the plea agreement informed Davis that he was waiving an appeal and collateral attack on his sentence. *See* Ex. FF at 5-7 and 11. The magistrate judge specifically questioned Davis during the change of plea hearing about the waiver provision in the plea agreement, and Davis averred that he understood the terms and significance of the waiver. *Id.* Davis fails to set forth a nonfrivolous ground upon which he might have appealed. Davis received the 180-month sentence he bargained for as part of his plea.[7] His actual calculated guideline sentence range was 188 to 235 months. Thus, if he pled guilty without a plea agreement or went to trial and was convicted, he faced a sentence under the advisory guidelines of up to 235 months. He benefitted from the plea agreement by receiving a sentence that was actually *below* the low end of the applicable guideline range. Under these circumstances, the court finds that a rational defendant in Davis's position would not have wanted to appeal and that there were no circumstances

---

[7] A sentence of 180 months is the minimum sentence under the ACCA. *See* 18 U.S.C. § 924(e)(1).

known or knowable to Goggans from which Goggans should have concluded that a rational defendant would want to appeal.  *Flores-Ortega*, 528 U.S. at 480.

In summation, the court concludes that (1) Davis did not instruct Goggans to file an appeal; (2) Davis did not reasonably demonstrate an interest in appealing; and (3) a rational defendant in Davis's position would not have wanted to appeal.  Therefore, Goggans did not render ineffective assistance of counsel by failing to file a direct appeal on Davis's behalf. Davis is not entitled to any relief based on this claim.

### 2.   *Coerced Guilty Pleas*

Davis contends that his original counsel, Donnie W. Bethel, coerced him into his initial guilty plea and that his subsequent counsel, Bruce Maddox, then "frightened" him into entering a second guilty plea although he did not understand the terms of that guilty plea. Doc. No. 1 at 5; Doc. No. 2 at 13-18.

As to his initial guilty plea, Davis cannot demonstrate that he was prejudiced by any alleged coercion by Bethel, because he was allowed to withdraw that plea and effectively start anew.  Therefore, Davis is not entitled to relief based on his assertion of Bethel's alleged ineffective assistance.

With regard to his second guilty plea, entered when he was represented by Maddox, Davis maintains that the plea was unknowing and involuntary because (a) he did not have enough time – only 15 minutes – to discuss the plea with Maddox; (b) Maddox coerced him into pleading guilty because he had not prepared Davis or his witnesses to testify at trial; (c) he had a viable "necessity" defense to the charged offense; (d) Maddox told him he would

receive a sentence of less than 180 months by pleading guilty; (e) he did not understand that, under the plea agreement, he was waiving his right to appeal his sentence pursuant to the ACCA; and (f) he thought he could appeal an adverse ruling on his pretrial suppression motion.  Davis's claim that his second guilty plea was unknowing and a product of coercion by Maddox is refuted by the record.

Responding to Davis's allegation that he rendered ineffective assistance, Maddox filed an affidavit with this court in which he states, in pertinent part:

> I have reviewed the claims of Mr. Davis in his affidavit in support of his Motion pursuant to 28 U.S.C. Sect. 2255, and it is my understanding of Mr. Davis's pleadings that he claims:
>
> 1.   That I failed to prepare a defense for him. Attached hereto are letters that I sent to him on November 23 and 24, 2008, regarding trial preparation. They are emblematic of trial preparation problems with Mr. Davis.[8]   The weekend prior to trial, I met with several witnesses and prepared them to testify regarding our defense. We were as prepared for trial as we could be under the circumstances, and I believe that I could have done nothing more to prepare given the circumstances of the case and Mr. Davis's behavior.  Our only reasonable defense strategy was claim "necessity," although I did not believe our evidence rose to the level necessary to establish such.  In the process, however, we had hoped for jury sympathy and, perhaps, "jury

---

[8] Maddox's letters to Davis contain Maddox's implorations to Davis to provide him with the names of favorable witnesses, to cooperate with Maddox in preparing him to testify at trial, and to keep his appointments to meet with Maddox to discuss and prepare his defense. Doc. No. 13 at 4-5. In one of the letters, Maddox advises Davis that he cannot afford to miss further appointments with Maddox because his assistance in preparing his own defense is crucial, especially because some of the witnesses requested by Davis appeared unwilling to help Davis.  *Id*. at 5.

nullification."

2.      That I frightened him into pleading guilty in the
        middle of trial.  I told him my honest opinion of
        the likelihood of a favorable verdict.    The
        government had concluded the case-in-chief. Mr.
        Davis was a necessary witness in his own defense.
        He had a terrible temper and a tendency to "make
        things up" under questioning.  I did not believe he
        would honestly establish "necessity," and I
        believed that his testimony would harm him more
        than help.  He and I discussed the matters with his
        friends and family.  He was concerned that the
        government would prove treacherous in their
        dealings as to sentencing.  As a result, he and I
        met privately with Verne Speirs, AUSA, the
        prosecutor at trial, to discuss the shortening of the
        sentence if Mr. Davis provided, while on bond
        awaiting sentencing, substantial assistance.  Mr.
        Speirs assured him that, if he provided substantial
        assistance, he would receive a sentence reduction.
        Unfortunately,   while   on   bond,   Mr.   Davis
        continued violating the law rather than providing
        assistance and was re-arrested.

Doc. No. 13 at 1-2.

At the second change of plea hearing, the magistrate judge engaged in an extensive

colloquy with Davis that established, among other things, his plea was knowing and

voluntary.  *See* Ex. FF at 8-13 and 15.  The record is full of statements made by the court to

Davis with respect to the consequences of entering a plea of guilty.  *Id.*  The court also

explained to Davis that he had a right to plead not guilty and to be tried by a jury.  *Id*. at 11.

To all the court's inquiries, Davis responded that he understood his rights and that he

understood what he was giving up by way of his plea.  *Id.* at 8-13.  As noted above, the court

specifically questioned Davis about the waiver provision in the plea agreement, and Davis averred that he understood the terms and significance of the waiver. *Id.* at 5-7 and 11. Davis also averred that he had discussed the charge against him with Maddox, that he understood the charge, and that he was fully satisfied with Maddox's representation. *Id.* at 4-5. He further averred that no one had attempted to force him to plead guilty and that his guilty plea had not been induced by any promises not set forth in the plea agreement. *Id.* at 5. Davis also acknowledged that he understood the Government had agreed to recommend a specific sentence of 180 months and that if the district court chose not to follow this recommendation, he would be allowed to withdraw his guilty plea. *Id.* at 5-7.

"There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). Moreover, a defendant's representations regarding the voluntary nature of his plea "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Davis's sworn statements in open court at the change of plea hearing contradict his current assertion that he did not understand the terms of his guilty plea.

Further militating against Davis's argument that he was hurried, frightened, and coerced by Maddox into entering a plea agreement he did not understand is the fact that Davis had already been through the entire plea process (with different counsel) in the same

16

case and had been allowed to withdraw his earlier plea when it was determined he would be subject to sentencing pursuant to the ACCA.  Consequently, Davis should have been keenly aware when entering his second guilty plea that he was subject to the ACCA's 180-month mandatory minimum sentence and likewise observant of the various terms of his plea agreement, including the conditions under which he could or could not withdraw his plea and his limited right to pursue claims in further proceedings.  Indeed, Davis was engaged enough during the plea colloquy to recognize that the magistrate judge initially mistakenly stated that Davis would not have the right to withdraw his second guilty plea if the district court decided to sentence him more harshly than to what the parties had agreed.  Ex. FF at 7-8.  Thus, Davis was able to ensure that if the district court chose not to follow the Government's sentencing recommendation of 180 months, he had the right to withdraw his guilty plea. Finally, Davis fails to demonstrate that he had a reasonable basis for believing he could appeal the adverse ruling on his pretrial suppression motion despite the fact he was entering an unconditional guilty plea.  Davis does not contend that Maddox told him he could appeal the suppression issue under the terms of his plea agreement, and nothing that transpired during Davis's second change of plea hearing should have suggested to Davis that he was reserving the right to appeal the suppression issue.  Furthermore, Davis has neither proffered nor demonstrated that the court would have accepted a conditional guilty plea or that the Government would have consented to such a plea.[9]

---

[9] Federal criminal defendants must obtain "approval of the court and the consent of the
(continued...)

Considering the record in its entirety – including and especially Davis's sworn statements at the change of plea hearing – the court finds that Davis understood the terms of the plea agreement, that his second guilty plea was knowing and voluntary, and that he was not coerced or frightened into entering that plea. Consequently, Davis fails to demonstrate that counsel Maddox rendered ineffective assistance in this regard. Davis is not entitled to any relief based on this claim.

## C.    Sentence Pursuant to ACCA

Davis claims he is "actually innocent" of being an armed career criminal because he does not have the three prior convictions for violent felonies or serious drug offenses required under the ACCA.   Doc. No. 1 at 8; Doc. No. 2 at 27-28. In a related claim, he contends that counsel Maddox rendered ineffective assistance by "forcing" him to plead guilty to a charge that included enhanced sentencing under the ACCA when he had only two prior qualifying convictions. Doc. No. 1 at 7; Doc. No. 2 at 18-27. Davis argues now, as his

---

[9](...continued)

government" before entering a conditional plea of guilty. Fed.R.Crim.P. 11(a)(2). Thus, "[c]riminal defendants have no right to enter a conditional plea" under federal law. *United States v. Bundy*, 392 F.3d 641, 647 (4th Cir. 2004). Consequently, courts applying federal law have held that "neither the district court nor the government has any obligation to advise the defendant of the availability of a conditional plea," *United States v. Bell*, 966 F.2d 914, 916 (5th Cir. 1992), and that "[t]he failure of [a] defendant's ... attorney to seek a conditional plea agreement cannot be charged to attorney incompetence," *United States v. Alvarez–Quiroga*, 901 F.2d 1433, 1437 (7th Cir. 1990). *See United States v. Webb*, 1997 WL 417356, at *1 (10th Cir. July 25, 1997) (unpublished) (emphasizing that the "attorney's failure to negotiate a conditional guilty plea reserving the right to appeal the suppression issue cannot be unreasonably deficient performance because Mr. Webb had no right to enter a conditional guilty plea in the first place," and that "the ability to obtain a conditional plea agreement was beyond Mr. Webb's attorney's control" since such pleas require approval of both the government and the court).

18

counsel Goggans did at sentencing, that his three prior convictions for serious drug offenses were not temporally distinct and thus should not have been treated as three separate qualifying convictions – but rather only a single conviction – for purposes of the ACCA. *Id*. *See* 18 U.S.C. § 924(e)(1). Davis's claims here strike the court as a backdoor attempt to litigate sentencing issues waived under his plea agreement. In any event, because the Government established that Davis had at least three prior qualifying convictions committed on occasions different from one another, Davis was properly sentenced under the ACCA.

In order for enhancement under the ACCA to be proper, a defendant must have been convicted of three violent felonies or serious drug crimes "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The Eleventh Circuit has interpreted this phrase to require that the crimes were committed successively rather than simultaneously. *United States v. Pope*, 132 F.3d 684, 689-93 (11th Cir. 1998). "Mere temporal proximity is ordinarily insufficient to merge multiple offenses into a single criminal episode. Distinctions in time and place are usually sufficient to separate criminal episodes from one another even when the gaps are small." *Id*. at 690. Where the prior convictions arise out of separate criminal episodes, the convictions count as separate qualifying convictions under the ACCA even if the convictions were adjudicated in the same criminal proceeding. *United States v. Owens*, 15 F.3d 995, 998 (11th Cir. 1994); *see also, e.g., United States v. Hayes*, 951 F.2d 707, 708-10 (6th Cir. 1991).

The indictment charging Davis with possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1) listed four specific prior felony convictions in support of

the charge and application of the ACCA, 18 U.S.C. § 924(e)(1):  (1) a March 20, 1992, conviction in this court for conspiracy with the intent to distribute cocaine; (2) a March 20, 1992, conviction in this court for distribution of cocaine; (3) a March 20, 1992, conviction in this court for importation of cocaine; and (4) a March 25, 1983, conviction in the Circuit Court of Montgomery County, Alabama, for first-degree robbery.  Ex. A.

At sentencing, in support of application of the ACCA, the Government introduced two exhibits:  (1) "Ex. 1," a copy of this court's Mach 20, 1992, judgment reflecting, among other things, that Davis was convicted of the three felony drug convictions listed in the indictment; and (2) "Ex. 2," a copy of the state-court transcript of record reflecting that Davis was convicted in 1983 of the robbery conviction listed in the indictment.  *See* Case No. 2:07cr12-MEF, Doc. 122.  This court's judgment in Ex. 1 demonstrates on its face that Davis's prior convictions for serious drug offenses were for crimes committed on occasions different from one another.  That exhibit shows that Davis was convicted on March 20, 1992, for (1) conspiracy with the intent to distribute cocaine for an offense concluding on May 30, 1991; (2) possession with the intent to distribute cocaine for an offense occurring on June 16, 1988; (3) possession with the intent to distribute cocaine for an offense occurring on May 4,1988; and (4) possession of cocaine onboard an aircraft for an offense occurring on June 18, 1988. *See* Case No. 2:07cr12-MEF, Doc. 122 - Exs. 1 and 2.

The district court relied on Exs. 1 and 2 in determining that Davis's qualifying prior offenses occurred on different occasions from one another.  The sentencing transcript reflects the following statements by the court:

20

First, in looking at your criminal history and now looking at Government's Exhibit 2, which is a transcript of the very record which has been identified by the case action number CC-83-269, you were convicted on March 25th, 1983, of the criminal offense of robbery in the first degree. That would qualify as a previous or predating crime of violence.

Secondly, and more complicated, possibly, is the numerous convictions that you received out of this court back in 1992. I'm looking at the judgment in a criminal case, Government's Exhibit 1, and it appears that you were convicted of being in possession of cocaine while aboard an aircraft. The date of offense conducted was June 18, 1988; possession with intent to distribute cocaine, May 4, 1988; and possession with intent to distribute cocaine, June 16, 1988.

I find that those are all three separate qualifying crimes of violence or drug crimes for which you would qualify as an armed career criminal. For that reason, your attorney's objection is overruled.

Ex. LL at 12.

The district court relied on judgments of conviction – documents similar to those approved in *Shepard v. United States*, 544 U.S. 13, 23-26 (2005) – for use in determining that Davis's offenses were temporally distinct from one another for purposes of the ACCA. Those documents established that Davis had four prior qualifying convictions[10] for offenses that occurred on occasions different from one another. Because the Government established that Davis had at least three prior qualifying convictions committed on occasions different from one another, Davis was properly sentenced under the ACCA. For that reason, there is no merit to Davis's claim that he is "actually innocent" of being an armed career criminal. Likewise, and consequently, there is no merit to Davis's claim that his counsel Maddox

---

[10] Davis does not dispute that his first-degree robbery conviction was a violent felony or argue that his drug convictions were not for serious drug offenses.

rendered ineffective assistance by forcing him to plead guilty to a charge that included enhanced sentencing under the ACCA when he had only two prior qualifying convictions. Davis is entitled to no relief here.

**D.     Suppression Issue**

Davis claims that the evidence against him should have been suppressed because it was the product of an unlawful search and seizure in violation of the Fourth Amendment. Doc. No. 1 at 9; Doc. No. 2 at 28-30.  The Government correctly argues that this claim is procedurally defaulted because Davis did not raise it on direct appeal.

Ordinarily, if a claim is not advanced on direct appeal, it is deemed procedurally barred from review in a § 2255 proceeding.  *See Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994); *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989).  "A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule.  Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error."  *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).  "Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  *Lynn*, 365 F.3d at 1234–35 (quoting *Mills*, 36 F.3d at 1055).

A meritorious claim of ineffective assistance of counsel may satisfy the "cause" exception to procedural default.  *Greene*, 880 F.2d at 1305.  To the extent Davis asserts

22

ineffective assistance of his counsel for failing to raise his suppression issue in a direct appeal, he fails to show cause excusing his procedural default – because he doe not establish that his counsel rendered ineffective assistance in this regard.  As found in Part II.B.1 of this Recommendation, above, Davis's counsel at sentencing, Goggans, did not render ineffective assistance of counsel by failing to file an appeal on Davis's behalf, because Davis did not instruct him to file an appeal or reasonably demonstrate an interest in appealing and a rational defendant in Davis's position would not have wanted to appeal.  Further, Goggans had no basis for initiating on appeal pursuing the suppression issue, because Davis had not entered a conditional guilty plea reserving his right to appeal the district court's ruling denying his pretrial motion to suppress.

Davis does not assert that he is actually innocent of the firearm offense to which he pled guilty.  Accordingly, because he demonstrates neither cause nor actual innocence to excuse his procedural default, his claim that the evidence against him was the product of an unlawful search and seizure is procedurally barred from review in this proceeding.[11]

### III.   CONCLUSION

---

[11] Davis's claim the that evidence against him – specifically, the firearm found on his person – was the product of an unlawful search and seizure by law enforcement officers was fully litigated through a pretrial motion to suppress filed by his original counsel, Donnie W. Bethel.  After a full evidentiary hearing, the magistrate judge entered a recommendation finding that the officers had a reasonable suspicion justifying the stop and pat-down of Davis that led to the discovery and seizure of the gun.  Ex. E.  The district court adopted the magistrate judge's recommendation and denied the motion to suppress.  Ex. K.  The arguments presented by Davis in his § 2255 motion are an attempt at wholesale relitigation of the suppression issue, rejecting the findings and conclusions of law by the magistrate judge and district court.  The court does not find Davis's arguments to be meritorious.

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Davis be DENIED.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before December 10, 201**3. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*,

Done this 22nd day of November, 2013.


/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE